IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRIDE OF SAN JUAN, INC., | No. C 06-2032 SBA |
| Plaintiff, | **ORDER** |
| v. | [Docket Nos. 10, 30] |
| CHARLES DIBLE | |
| Defendants. | |

This matter comes before the Court on Plaintiff's Motion for Summary Judgment and Motion to Strike the Answer of Defendant Dible.

**BACKGROUND**

Plaintiff is a seller of wholesale produce. SunAgra is a buyer or seller of wholesale produce, and Defendant Dible is the principal of SunAgra. Compl. at ¶¶ 1, 2. Plaintiff sold SunAgra perishable produce in October, November and December 2005. The total amount invoiced was $10,005.50. Trentz Decl. at Ex. A. Plaintiff asserts that SunAgra received and accepted the produce identified in the invoices. Compl. at ¶ 9. SunAgra applied for credit from Plaintiff, and agreed to Plaintiff's terms, including payment of a service charge of 1.5% per month to be imposed on unpaid balances and reasonable legal fees in the event that suit is brought to enforce payment. Trentz Decl. at Ex. A. The application was signed by Dible, as the owner of SunAgra. *Id*. The invoices have not been paid to date. Trentz Decl. at ¶ 14.

Plaintiff filed a Complaint on March 16, 2006, seeking to enforce its rights under the Perishable Agricultural Commodities Act (PACA) against SunAgra and Dible. Both Defendants

were properly served on April 11, 2006. On May 3, 2006, Dible filed a pro se Answer.[1] *Id.* at Ex. B. SunAgra did not file an answer, and the clerk entered default against it on July 5, 2006. *Id.* at Ex. C. The instant Motion to Strike was filed on July 6, 2006, and the instant Motion for Summary Judgment was filed on August 2, 2006. Dible failed to file an opposition to either motion.

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56, a court may properly grant a motion for summary judgment if the pleadings and materials demonstrate that there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment may be granted in favor of a defendant on an ultimate issue of fact where the defendant carries its burden of "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325; *see Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577 (Fed. Cir. 1989).

To withstand a motion for summary judgment, the non-movant must show that there are genuine factual issues which can only be resolved by the trier of fact. *Anderson*, 477 U.S. at 250. The nonmoving party may not rely on the pleadings but must present specific facts creating a genuine issue of material fact. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The court's function, however, is not to make credibility determinations. *Anderson*, 477 U.S. at 249. The inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion. *T.W. Elec. Serv.*, 809 F.2d at 631.

It is not the task of the district court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of

---

[1] Dible does not appear to be a lawyer.

2

the moving party. *See id.; see, e.g., Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1028-29 (9th Cir. 2001) (holding that, even if there is evidence in the court file which creates a genuine issue of material fact, a district court may grant summary judgment if the opposing papers do not include or conveniently refer to that evidence).

## **DISCUSSION**

PACA provides a remedy to unpaid sellers of perishable produce. 7 U.S.C. § 499e. It provides that "the perishable commodities or proceeds from the sale of those commodities are held in trust by the dealer for the benefit of the unpaid seller until full payment is made." *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 282 (9th Cir. 1997).[2] As such, "by operation of § 499e(c)(2), a statutory trust in a defined *res* is created whenever a seller or supplier of perishable agricultural products provides such products to a commission merchant, dealer, or broker on credit. If the seller gives timely notice of its intent to preserve its benefits under the trust, the buyer must conduct itself as trustee of its assets until the seller is paid in full."

Under 7 U.S.C. § 499e(c)(4), the seller may use "ordinary and usual billing or invoice statements" to give notice of its intent to preserve its benefits under the trust. The invoice must

---

[2] A dealer is defined in the statute as "any person engaged in the business of buying or selling in wholesale or jobbing quantities, as defined by the Secretary, any perishable agricultural commodity in interstate or foreign commerce, except that (A) no producer shall be considered as a "dealer" in respect to sales of any such commodity of his own raising; (B) no person buying any such commodity solely for sale at retail shall be considered as a "dealer" until the invoice cost of his purchases of perishable agricultural commodities in any calendar year are in excess of $230,000; and (C) no person buying any commodity other than potatoes for canning and/or processing within the State where grown shall be considered a "dealer" whether or not the canned or processed product is to be shipped in interstate or foreign commerce, unless such product is frozen or packed in ice, or consists of cherries in brine, within the meaning of paragraph (4) of this section. Any person not considered as a "dealer" under clauses (A), (B), and (C) may elect to secure a license under the provisions of section 499c of this title, and in such case and while the license is in effect such person shall be considered as a "dealer." 7 U.S.C. § 499a(b)(6).

The Court sought supplemental briefing from the parties regarding whether SunAgra qualifies as a dealer within the meaning of the statute. Plaintiff's brief and the evidence attached thereto show that SunAgra had a PACA license from 2002 through September 2005. *See* Plaintiff's Supplemental Brief Ex. A, B (containing a printout of PACA license, and a decision by the United States Dept. of Agriculture dated July 11, 2006, stating that SunAgra is licensed under PACA). Defendant was given the opportunity to respond, and failed to do so. Thus, the Court finds that at the time the goods were sold to Plaintiff, SunAgra was a dealer within the meaning of the statute.

1  contain the following statement: "The perishable agricultural commodities listed on this invoice are
2  sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural
3  Commodities Act, 1930 (7 U.S.C. § 499e(c)). The seller of these commodities retains a trust claim
4  over these commodities, all inventories of food or other products derived from these commodities,
5  and any receivables or proceeds from the sale of these commodities until full payment is received."
6  *Id*. Plaintiff submits the declaration of its Chief Operating Officer, Peter Trentz, who states that the
7  invoices sent to SunAgra contained the language necessary to preserve the trust, and attaches the
8  invoices. The invoices each include the requisite statement. Trentz Decl. at Ex. A. Defendant has
9  offered no evidence that Plaintiff failed to preserve its trust rights under PACA. Thus, there is no
10 issue of material fact as to whether Plaintiff has appropriately preserved its trust rights.

11      Plaintiff further asserts that the invoices have not been paid. As evidence, Plaintiff offers a
12 letter from Dible stating, in relevant part: "I have finally been able to arrive at an operating model
13 that allows me to begin repaying you. Though this first check is not a huge amount of money it is
14 nevertheless a beginning. My hope and efforts are aligned to make this beginning culminate into the
15 satisfaction of my debts to you." Motion at Ex. D.[3] In his Answer, Dible denies factual allegations
16 in the Complaint including (1) that the produce was sold pursuant to the invoices, (2) that the
17 company received the invoices, (3) that the company received and accepted the produce, and (4) that
18 the company failed to pay for the produce. However, since he has filed no opposition to Plaintiff's
19 motion, Dible offers no evidence to support these denials. Thus, he has not created a genuine issue
20 of material fact with respect to whether he received the invoices or paid for the produce.

21      Finally, Plaintiff argues that Dible breached his fiduciary duty to Plaintiff, and thus should be
22 held personally liable for the amount of the PACA trust. The Ninth Circuit has held that "individual
23 shareholders, officers, or directors of a corporation who are in a position to control PACA trust
24 assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable

---

[3] Plaintiff claims that the letter was written on July 17, 2006, *see* Motion at 8, but the letter itself is undated. In fact, the letter is not on its face addressed to Plaintiffs; it is addressed simply to "Vendor."

4

under the Act." *Sunkist Growers*, 104 F.3d at 283. Plaintiff asserts that Dible was the sole officer or director of SunAgra. He signed the letter of credit with Plaintiff as the "owner" of the company, and Plaintiff attaches a check signed by Dible on behalf of the company. Motion at Ex. F. As such, Plaintiff argues, Dible "had the requisite control over the Company's financial dealings and the PACA trust assets necessary to direct the Company's discharge of its obligations to the PACA trust beneficiaries." Motion at 11.

In his Answer, Dible denied Plaintiff's allegation that he was "the officer and person in charge of all aspects of the Company's business undertakings," and that he "controlled the Company's financial dealings, including those involving the PACA trust assets." Answer at ¶¶ 25, 28. However, he has not offered any evidence identifying other officers or directors of SunAgra, or any evidence otherwise suggesting that he is not in a position to control trust assets. *See Grimmway Enterprises, Inc. v. Bayside Produce, Inc.*, 2005 WL 1656874 at *2 (N.D. Cal. 2005) (holding that, where plaintiffs offered undisputed evidence that an individual oversaw the finances and day-to-day operations of the company, the individual was in a position to control trust assets and could be held personally liable for the debt). Thus, there is no triable issue of fact with respect to whether Dible was in a position to control trust assets.

Defendant has failed to create any genuine issues of material fact with respect to Plaintiff's right to enforce the PACA trust against Dible in his individual capacity. Thus, summary judgment is appropriate.

IT IS HEREBY ORDERED THAT summary judgment is GRANTED as to Dible. Because default has been entered against SunAgra, it is no longer a participant in this litigation, and the Court cannot grant Summary Judgment against it. The proper procedure is for Plaintiff to file a Motion for Default Judgment against SunAgra.

IT IS FURTHER ORDERED THAT Plaintiff's Motion to Strike Dible's Answer is DENIED AS MOOT.

Plaintiff argues that attorney's fees and prejudgment interest should be included in the

5

judgment. PACA provides that the trust exists until the debtor makes "full payment of the sums owing in connection with such transactions." 7 U.S.C. § 499e(c)(2). The Ninth Circuit has held that the words "in connection with" authorize not only the price of the goods but also contractual rights to attorneys' fees and interest. *Middle Mountain Land & Produce, Inc. v. Sound Commodities, Inc.*, 307 F.3d 1220, 1222-23 (9th Cir. 2002). *See also Rey Rey Produce SFO, Inc. v. M&M Produce & Food Service*, 2006 WL 1867633 at *3-4 (N.D. Cal. July 5, 2006) (holding that a provision for attorneys' fees on invoices created a contractual right). As noted, by signing the letter of credit, Defendants agreed to pay interest and attorneys' fees in the event of nonpayment. Thus, Plaintiff is entitled to attorneys' fees and interest on the past due amount. In the Complaint, Plaintiff asked for judgment in the amount of $12,732.02. However, that amount has since increased. The principal owed is $10,005.50, and the accrued interest claimed is $1,148.16. The attorneys' fees claimed are $18,833. Thus, Plaintiff now seeks a judgment in the amount of $29,986.66. Trentz Decl. at Ex. A.

IT IS FURTHER ORDERED THAT this matter is REFERRED to a Magistrate Judge for a report and recommendation on the proper amount of damages, pursuant to Civil Local Rule 72-1.

IT IS SO ORDERED.

Dated: 10-3-06

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge

6